Clerk, please call the next case. The attorneys who are going to argue, please approach the bench and introduce yourselves. Good morning, Your Honor. John Anderson with the Eppley Bank of America. Good morning, Your Honors. Louis Burns on behalf of the defendants, DDL and Lawrence Freed. You both have 15 minutes. Appellant, use part of that for your rebuttal. Yes, Your Honor. Appellant, you may proceed. Thank you. Good morning. We're here once again on this case. I'd like to start off by saying I think this matter is fairly simple. I'd like to primarily focus the Court's attention on the substitution of judge issue. The underlying court relied almost exclusively upon a I'd like to interrupt. I'm sorry for interrupting. But you know, of course, this is the appellate court is a court of limited jurisdiction. Could you address yourself as to how we have jurisdiction of these matters? Well, Your Honor, it was a final order entered. There were several appeals. They were consolidated into this current appeal. Therefore, through the final orders, the substitution of judge is interlocutory. Therefore, it falls under the province of the other orders. Well, you suggested in your reply to the Blue Briefs attack on jurisdiction that there was a problem with filing the transcripts that on the last appeal, which involved the appointment of a receiver and contempt, it just wasn't ready to bring up the idea of addressing the SOJ issue. Would that be a fair summary of what you're saying? Not quite. Not fully, Your Honor. What we had said before is this issue was part of a group of appeals which were consolidated. Some were withdrawn. Then subsequent to that notice of appeal, while this was still pending, there was an order entered, which was a 307A5 order regarding a receiver. And the only issue that can be raised in that appeal deals with those issues. That is what the First District has held. Panduit, Airline Canteen, Murgis. That was the only issue. We cannot pick and choose. Well, was that a 307 appeal, though, in the prior appeal that we ruled on? Yes, it was, Your Honor. The one that was with me at the time? Yes. So it was not raised under 304 appointing a receiver, which is going to be 304B, or contempt, which is 304B5. It was a contempt. I mean, there was the order that actually Your Honor ruled upon, I'm sure you're well aware, dealt with a contempt in the appointment of a receiver. So you had two different prongs, which would give it interlocutory status. Therefore, the only issue that could have been raised at that time dealt with the contempt receiver. Well, but doesn't the idea that this, the trial court, the court that entered the judgment against your clients, was now proceeding to hold your client in contempt and then also to appoint a receiver to try and to corral all the LLCs together. Had you prevailed on the idea that that judge should have granted the SOJ back in January of 2011, why couldn't that have been brought up in your 307, 304B5 appeal? Two reasons, Your Honor. One, it was already pending in front of this Court. So in essence, what I would have to do is take an argument from this appeal and then raise it over here. Well, I can't do that. Well, in this case, I think we've done a lot of that. I could be mistaken, but go ahead. I don't think that's appropriate that I would take something from one appeal and then raise it in another appeal, which was on an expedited basis on one issue. Go ahead. And I believe the First District is clear that it must only be on this issue. We can't have piecemeal. You can't raise other issues in contempt under the Murgis, the Panduit, and the Airline Canteen case. You can't be raising other issues in that appeal. I think we were limited to only raising those issues. In addition, Your Honor, there was nothing in the record on that expedited appeal. As you may recall, we only had a few weeks to put the matter together. Well, actually, that's what I looked up after reading the reply brief. And the SOJ proceedings were heard on January 21st of 2011. That transcript was generated and filed in the trial court on May 9th of 2011. The appeal, as I see it, was filed on October 25th of 2011, and the brief was filed on November 16th, 2011. So the brief, the notice of the appeal, which I think is really the operative, occurred some five months, more than five months, after the transcript was ready. We had the transcript. So it would not have been the lack of a transcript. It was sitting around. It was attached. Again, Your Honor. I bet it's in there somewhere if I were to look in that record. I'm sure you're right. It was somewhere in the record. I'm just pointing out, though, that this matter was pending in front of this court on a parallel path. So, again, I don't believe we are entitled or permitted to raise an issue in this appeal and then raise it contemporaneously in another appeal. The question isn't whether you're permitted. The question is whether or not you're required to. The right to this will have no effect on you. It's not a matter of jurisdiction. It's especially where the SOJ goes to whether or not this judge could enter the contempt finding and appoint a receiver. Why not raise it? It's typed up. It's fairly straightforward, you would think. Because it was part of another appeal, Your Honor. And I believe the First District does provide that. We are limited in what we can bring in that type of a proceeding. That's why it was not raised. It would have only behooved us to have raised it at the time if we thought we were permitted to do so. Okay. Proceed. If we take, if we can, unless Justice Harris had another, that certainly goes to the SOJ question. Was there another issue on whether or not the carve-out provision should have been appealed earlier, whether it be $110 million or $55 million? Why was that not appealed? It was appealed, Your Honor. The issue, again, we ran into, we had five different appeals pending at the same time. Not at the same time, but ultimately at the same time. They were then consolidated pursuant to this Court's order. So they all were part of eventually one appeal, which is where we are today. So it was appealed timely. It just wasn't appealed as part of the contempt order. See, that begets the issue. Should we have raised the carve-out then also in the contempt appeal? And I would argue I would not be permitted to do so. If we then take a look at the actual underpinning of this decision, the bank proposed that 214.01 and 214.02 are identical. Therefore, if a ruling under 214.01 provides that the case must be brought and you're not entitled to a substitution of judge under 214.01, you're not entitled to one under 214.02. However, when we raised that issue and moved for the substitution of judge, we were not given an opportunity to brief the matter. If all we do is take a look at the statutes, and if we just take a look at the I think your honors will have to rule that 214.02 is not identical to 214.01. 214.01 provides specifically the proceeding must, the new petition, must be brought in the same proceeding. It must. It's not permissive. It's mandatory. 214.02 is diametrically opposed. You may bring it in the same court. Not the same proceeding, the same court. However, if you want to bring it in another county, that's okay, too, depending on where the defendant resides. Also, under Section G, you can have parallel or concurrent proceedings. So if we just take a look at the statute, it must be brought. Therefore, that case has already been ruled. It's been litigated. Now they're trying to unseat a verdict. 214.02 is different. It starts with a new pleading, a citation. Then it must be served personally. Then there's an entirely new set of rules and bylaws which must be followed in order to prosecute and defend that case. 214.01 doesn't have any of those parameters. So if it's a new proceeding, then the plaintiff and the defendant should be entitled to take an SOJ. That is our right. That is the plaintiff's right. But what's happened here is the plaintiff went back into the very same courtroom where the case was still pending. The foreclosure case was still pending at that time. Now, we know that the circuit court provides that supplementary proceedings are to be brought in the tax and miscellaneous remedy section. That did not occur. So in essence, what we have permitted, if we permit this to continue, the plaintiff can form shop. Every supplemental proceeding needs to be brought in tax and miscellaneous remedy? I believe that's the. Every supplemental proceeding anywhere brought in the circuit court. That is the rule, Your Honor, tax and miscellaneous remedy section. If there's a domestic relations judgment, that's brought in 214.01 before Judge Sherlock. If there's a judgment entered in the municipal division, that goes into 214.01 too. If there's a judgment entered in the law division, it goes to room 2503 in front of Judge White. How about probate? Where does that go? If there's a post-judgment proceeding, if it's a post-judgment supplementary proceeding, it should go to the tax and miscellaneous section. Counsel, there are judges sitting in downstate Illinois that hear everything about a case. Are you suggesting that we write up a decision that applies only to the first district, Cook County? Absolutely not, Your Honor. However, let's assume it's a downstate case and they file it, plaintiff files it in the same proceeding in front of the same judge who just gave them the judgment. Well, isn't the defendant entitled to take a substitution of the judge? Why does the plaintiff have the sole right to decide where this case is pending? They have the sole right if this decision is affirmed, they have the sole right to say this is where the case is going to go. You have no rights. So if they decided the case was to be filed in DuPage County, let's assume they had done that. Would we have had a right to take a substitution of a judge? I would argue that we would. Sure you would, because that judge would not have made any substantive rulings on the case. You say at page 9 of your brief, quoting, Administrative custom, however, has allowed that supplementary proceedings for cases which originate in the chancellery department, retained by the same presiding judge as in the underlying prejudgment proceeding. Correct. And so I didn't see your brief. That's how it's done often. When you say they can do it, your argument is that when they do do it, that doesn't mean that you don't have an SOJ right. Correct. Because then I have no rights. The plaintiff chooses solely. Again, it is a new proceeding. New form, new pleading, new service, new set of rules. So, again, if we take this argument here, use an analogy, if the bank had obtained a judgment in the law division for a million dollars and then they went to enforce that judgment, that judgment, by operation of the rules in the Daly Center, will automatically go to Judge White. He will enforce that judgment. The citation will be returnable in front of Judge White. Now, if the plaintiff decides, geez, I really don't want to be in front of Judge White, I want to take a substitution of judge, they have that right. I've seen it done. And if I'm the defendant and I show up and I'm in front of Judge White and I don't want to be there, I have a right to take a substitution of judge. It's the same judgment. It just came from a different division of the courthouse. So, in essence, if this issue was affirmed, if you get a judgment, if a judgment is entered against you in a chancery, you are held to a different standard than if it was entered in the law division. Can I ask you to reach your second issue, the carve-out, and then the LLC, because, as Justice Harris mentioned, we're unfortunately pressed for time. So I don't have, I mean, I'm going to, as far as the LLC issues, Your Honor, I will rely upon a brief, so I don't have much more to add on that. As far as the carve-out, I'll keep that very limited. Feel free not to. Okay. It's $55 million different. Actually, $94 million. We've given you a bunch of orals. We continue to do so for what that's worth. I know they're of cold comfort. The issue essentially on the carve-out is that the way that section is drafted, if we do anything, contest, and that's the main word I think I'd like to focus on, and we italicized that word in our brief. If we contest the proceeding, we are hit with a $94 million penalty. That's all we have to do. So if the plaintiff were to file a complaint, and let's assume they said something that was erroneous, improper, either intentionally or unintentionally, if we contest that proceeding, we're hit with a $94 million penalty, because it doesn't say anything other than contest, hinder, or delay. So if we just read the basic, plain words, we get hit. It doesn't have to affect the collateral. It doesn't have to actually cause damage to the plaintiff. But if we contest the proceeding, we are hit with a penalty. And we use the example in our brief, if the matter was to be confirmed, and the bank had bid in $1 million, as opposed to $100 million, and we contested that, we could then be hit with a penalty, just for contesting that issue. So I think the briefs are replete with cases. But on that issue, that's not what happened, right? On this issue, having had the first appeal, right? It was the first appeal. Yes, Your Honor. And while it was handled quickly, because, Frankie, you and the other parties at that time, it was a different bank perhaps, moved quickly and this court moved very quickly. So while you say it was a month and it was a little bit longer than that, it seemed longer than that anyway. And so that's kind of the big deal. It's not missing, let's say, as you mentioned, the difference of a million to $100 million dispute. It's not a different dispute as to which receiver you wanted, although that was a point at the time that was one of the bases of that appeal. But it's a big deal. I mean, it's not just a – the application should cite our cases involving tax liens on cases for $119,000 on a $200 million property that lasted for 19 days and were bought out during the default or the cure period. So what's your best case if this is really bad? Well, here's why that doesn't quite apply, Your Honor, if I may, with all due respect. Here, there was a short delay, and I think we had written maybe it was perhaps two months on the receiver issue. But that doesn't correlate to a $94 million penalty. It isn't as if the bank was damaged $94 million because of a two-month delay in the receiver. So I think that is somewhat inapplicable. There is no – It's not the amount. It's the collateral effect, isn't it, or effect on the collateral? It could. That would be one of the issues. But there's no argument, nor did they make one, that the collateral was affected in any way. And, in fact, they had much difficulty in obtaining an insurance bond to take care of that. So they actually, I think, delayed it longer than we may have. But the issue that you get into with a penalty is does it correlate at all to the effect upon the collateral? And here, it does not. And, in fact, when they moved for summary judgment, they didn't actually even allege that there had been any because their argument was we don't have to if we can test, hinder, or delay. And our argument, there has to be some correlation. Yeah. Let me ask you this question. The word contest, let's say they ask for a receiver and they ask for receiver X to be appointed, whoever that was. This is a person you knew that would not be appropriate. Even if you contested the appointment of that person, would that be considered? Absolutely. Absolutely. Any – the way that is drafted, contest means anything. So if I contested anything, I have – there's a penalty. Thank you. Both sides are citing cases from other jurisdictions. This is an issue of first impression in Illinois. Yes, Your Honor. And how would you propose our writing a decision in this regard? I would propose, Your Honor, that there must be some correlation between the actual damage amount that was actually Flat out say it's a penalty? I think it is a penalty, Your Honor. Yes. Thank you. Thank you, Judge. Counsel. May it please the Court, John Anderson for the Appellee Bank of America. I'll start where the Court started, namely with the SOJ issue. As we stated in our briefs, we believe that that was waived for two separate and independent reasons. First, it wasn't raised as part of the second appeal on which this Court ruled in March of this year on the contempt and receivership finding. And second, the SOJ was waived because the notice of appeal was filed too late because their post-trial motion did not constitute a proper post-trial motion. Going first to the waiver by not having raised it in the second appeal that was ruled on by this Court in March 2012, counsel referred to the cases of the First District, Murgis and Airline Canteen. They were first raised in their reply briefs. We did not get a chance, obviously, to respond, but I'd like to respond now. First of all, in Murgis, that's a First District 1978 case. The Court said that on a 307 appeal, and, Your Honor, Justice Quinn, you were correct. It wasn't just a 307 appeal on receiver. It was as well a 304b-5 appeal on a finding of contempt. But in Murgis, the Court said that it could review findings of fact and the order entered prior to the preliminary injunction on review insofar as those findings determine the remedy granted in the injunction. In other words, in Murgis, the Court said we can look not just at the preliminary injunction, but we can look at other matters. Here they looked at findings to the extent they determined the preliminary injunction remedy. That's completely consistent with the case we cited, Sarah Bush Lincoln, which was decided in 1994, where the Court said that to the extent an earlier order bears directly upon the injunctive relief for which there's an interlocutory appeal, the Court can review that. The same is in Turner, which we also cite. The Court can look not just at the preliminary injunction order for which there's an interlocutory appeal, but any other order that would be outcome determinative. Here it's obvious that the SOJ ruling would have been outcome determinative in the second appeal. It was not raised, and it could have been. As for the record, anything that would have been needed to raise that issue of the SOJ in the second appeal could have easily been done with an affidavit and a record, which is provided in the case of a motion by the Court, and I think there's even a court rule providing for it. Namely, the material for it is very minor. The motion and the transcript itself, it could have easily been raised and wasn't. I think they do not contest the basic principle that if a matter could have been raised and wasn't raised, it's waived. If you look through the reply brief, they don't challenge that basic principle. We cite the Turner and Thornton cases for that. And I think that to the extent a matter is outcome determinative, with the first district decision in Merges and in Turner and with the Sarah Bush Lincoln decision, they clearly could have raised that and didn't, and thereby waived anything which would have been outcome determinative in that second appeal. And those would have been namely the SOJ ruling as well as the December 22, 2010 ruling granting the judgment inherent in which is the ruling on the carve-out guarantee. The second issue of waiver, Your Honor, I believe relates to the same two issues, the SOJ and the carve-out guarantee. And that is they did not appeal within 30 days of the December 22, 2010 order, which contained the Rule 304A finding. They filed a post-trial motion on the 30th day, and it's part of the appendices to our motion. And it simply states, request the court to reconsider its prior grant of a Rule 3004A certification and modify the December 22, 2010 order by vacating its finding that there is no just reason to delay enforcement or appeal the judgment order. That does not in any way attack the judgment order. And we cite numerous cases in our brief that to qualify as a 1203 post-trial motion, such as would toll the time for filing a notice of appeal, a post-trial motion must specifically in some way attack the judgment. It didn't. And therefore, it didn't waive the time for appeal, and that's the second basis for waiver of the SOJ issue and of the carve-out issue that was inherent in the judgment. Nevertheless, I'll go on to talk about the SOJ matter directly. Counsel made the argument, and he relies only on this distinction between 214-01 and 214-02, namely a 1401 petition to open a judgment and a 214-02, a supplementary proceeding to enforce the judgment. Both provisions provide that the statute 214-02 and rule 277 both specifically provide that an enforcement action under a citation is not a new proceeding. It's specifically termed to be a supplementary proceeding. It supplements the entry of the judgment and allows for enforcement of the judgment. It does not, as is the case in a civil action, determine the rights between the parties. That's already been determined in the judgment. This is just enforcement of the judgment. 21001, which gives the right to a substitution of judgment, applies only in a new civil action. A citation proceeding is not a new civil action. It's a supplementary proceeding. In the cases we cite that we had raised with the lower court, namely Estate of Rice and Green v. Alton Telegraph, deal with what a supplementary proceeding is. In Estate of Rice, it was to remove a co-executor. The court found that that supplemented the underlying testamentary action and was not a new proceeding. And similarly in Green v. Alton Telegraph, there was a removal issue to bankruptcy court. The court there found that a supplementary proceeding could not be segregated from the underlying action and removed. Namely, it's part of the main proceeding. Therefore, since it's part of the main proceeding, it's not a new civil action under 1001 allowing an SOJ. Counsel made a lot of arguments about how a citation should have been filed in the Tax and Remedies section of the circuit court. Well, in his brief at page 9, he said, Administrative custom, however, has allowed the supplementary proceedings for cases which originate in the chancery division be retained by the same presiding judge as in the underlying prejudgment proceeding. In other words, counsel acknowledges that the Tax and Remedies section in the law division, which is under general order number one, is for law division cases. In chancery, it stays in front of the judge who is hearing the matter, which is exactly what we did and exactly what Rule 277D provides. Namely, you can file it in the same proceeding, in the same court. And even if it is supposed to be in front of some other judge, as we cite in our brief at page 45, general order number one of the circuit court says that being before a judge in the wrong division will not affect the result. And this court and other appellate courts have ruled numerous times to that effect, as we cite at page 45 of our brief. In other words, the argument that this should have been before a different judge is not, finds no basis in the laws governing operation of the circuit court or in the opinions of this court. There's one case that counsel cites in his brief, Levecaire, that I think is particularly appropriate, too. It's at their opening brief on page 14. It's a First District 2007 decision. In Levecaire, judgment was entered on March 8, 2005. A citation issue. On September 29, 2005, a petition for contempt was filed for refusal to convey a three-story building. In that sense, it's very similar to the history of this case. Then, two months later, on November 29, 2005, an SOJ was requested. The court held that the rule to show cause, which was after the citations were issued, but before the SOJ was requested, did not constitute a new proceeding. Inherent in that ruling is that the citation itself, which resulted in the rule to show cause, is also not a new proceeding. Since it's not a new proceeding, there really is no basis for SOJ. And finally, I'd like to cite this court's decision, as we did in our brief, in Kick and, excuse me if I mispronounce this, Pianucci. It's a First District 2011 decision. And in that case, the court held that where a party has an opportunity to, using its words, test the waters, it does not have a right to a substitution of judge. Here, this is as clear a case as you'll ever get, that the defendants had an opportunity to test the waters with Judge Brennan in the circuit court. They had been before her for over a year at the time the SOJ was requested. And there had been numerous rulings on the merits. And so even if you did find they had a right to an SOJ, under the testing waters standard, as applied by this court in Kick and in other cases we've cited, they had no right to substitution of judge in any event. Can you get to the carve-out provision? Yes, I'd be happy to, Your Honor. On the carve-out provision, we believe that there's ample Illinois law to support it, as cited at page 20 of our brief, where we list a whole string of cases saying that under Illinois law, guarantees are enforced in accordance with their express terms, just like any other contract. In fact, in Lincoln Park decision, First District 1989, the court even upheld a provision of a guarantee in which the lender did not have to act in a commercially reasonable manner. If that's the party's agreement, it's enforceable. Here, even in this court's first opinion, it's cited that the guarantee isn't enforceable in accordance with its terms. We cite cases, in fact we cite all the cases we could find from any other jurisdiction that have ever dealt with this issue. And those cases uniformly uphold the carve-out provision. Counsel, can I ask you overall, aren't these provisions to provide the protection for the lender and maintain the viability of the collateral? Right, that's exactly what happened here. This provision was designed where it said if you do not contest the foreclosure to protect access to the collateral. And when you read the literature that we supplied in our appendix and in the case law, that is one of the reasons why these clauses are upheld. Right, but how in this case was the viability of the collateral affected? It's not necessarily the viability, but it's the access to the collateral. And that means when you make a non-recourse loan, the idea is you can get to the collateral quickly and efficiently with no roadblocks. Here it's the real estate pledged in favor of a very substantial loan. Well, let me ask you this, Counsel. I believe where this kicks in as far as contesting or hindering is in their response to the motion to foreclose and to appoint a receiver. And they argue that there's no need for this because the expense and the time of it would not be worth it. So is that your understanding as well? Was that their reason for objecting to the receiver to be appointed? They had a host of objections, all of which were unfounded, one of which was that they could run the property better than the receiver could. Well, I'm just looking at their response. I'm not looking at their pleading, and that's what they argue. So even in that instance when they're saying there's no need for one because there's too much time and expense and we can just do it a better way, even that kind of objection? Yes, and this Court ruled, citing to a federal court decision, similarly as we cite Heller here, it cited the home life, that the quality of the management provided by the borrower is not a factor in determining to appoint a receiver. That's in the Court's first opinion. And so the quality of their management over ours is not a factor that any court should consider under this Court's first opinion in this matter in deciding to appoint a receiver. So is there any good faith filing that one could come up with relative to that carve-out provision as far as objecting to the receiver? No. There's no such thing? No. And, you know, he cited the example of the $1 bid at a sale. Any sale would have to go before the court for approval where the court looks at the value of the sale and will pass on that. And so it's not really an issue. The court will have a chance to look at any ridiculous situation before there's a foreclosure. But I'd like to say one other thing, too, here. This guarantee, if you look at the wording of it, starts out first as a guarantee of the whole loan. And then there's a qualification that you lose when you take one of the actions listed. If this guarantee had been for 100% of the value of the loan, there would be no issue here today. Those kind of guarantees are upheld time after time after time. And the issue here, as you explained and as the courts that have looked at this, to allow access to collateral when there's a nonrecourse situation. They want to allow it promptly. And here the debtor chose a path. He's obviously a sophisticated investor. The court has found as much in the prior opinions where he triggered that increase in the amount. It should be enforced in accordance with the terms consistent with all the other decisions of this court on guarantees. And there was no penalty here. It was for the amount of the loan. All the cases they cited involving a penalty, none of which dealt with a guarantee, all were for some money in addition to the amount at issue on the contract. Here it's just the base amount of the loan. And all the courts that have looked at carve-outs have found that that's simply the actual damages. It's not a penalty. And so we think that the carve-out decision should be upheld. But the court only gets to that if it finds it hasn't been weighed. It's getting close. Don't push it. There's just one last issue, Your Honor. And that is on the charging order. I'd just like to briefly say that the LLC statutes are uniform laws. And under the Caperos decision, which they cite in their brief at page 27, when the court is looking at a uniform law, Illinois courts do look at courts of other jurisdiction for guidance. That's the whole purpose of having a uniform law in the first place. And we have said about the Minnesota case, GECC, and Cato, where the courts go through the reasoning under the statute, namely, that a charging order does not affect the LLC in any way, does not allow any management of the LLC or anything else, and therefore there's no need for jurisdiction over the LLC in entering a charging order. And so we believe that one should also be affirmed. Thank you, sir. Thank you, and thank you, Your Honor. Okay. You're quite welcome. Sir, you have a precious five minutes. I will be less than five minutes. I'm sure Your Honor has paid close attention to what was previously stated by opposing counsel. And if we pay close attention, we'll notice that opposing counsel intentionally is using the words new proceeding and new case interchangeably. As if 214.01 says new proceeding, 214.02 says new proceeding. Again, as we pointed out in our briefs, they're diametrically opposed suppositions. And 214.01 is entitled relief from judgments. 277 is when a proceeding may be commenced. So it's right in the title that it is a new proceeding. The words are not interchangeable. The legislature did not intend for them to be interchangeable. So, of course, this is a new proceeding. The statute tells us it's a new proceeding. Again, we have the citation, service, and a whole host of new rules. So when they say it's the same, let's ask Your Honors to be, let's all pay attention to what they're saying and what the statutes actually say. I also wanted to cite to the Airline Canteen case. Airline Canteen states that the ruling on a prior motion refusing a change of venue from the judge who ruled on the request for interlocutory relief cannot be considered on a Rule 307 objection. So I think Your Honors, the Airline Canteen case is supportive of our position. Opposing counsel also says that because this issue or this case may have been filed, say, in the wrong division, therefore it cannot be unwound. That isn't our position. If they had filed it in the wrong division, in domestic relations, no one objected, we didn't move for an SOJ, I would agree. I can't move to vacate based on that supposition. However, if they have filed it in that division, I move to take an SOJ, they say I'm not entitled, then I do have a right and I am entitled to vacate it based upon that. So when they argue the wrong division, that's not our argument. As far as testing the waters again, Your Honor, they're the ones who tested the waters, not us. They knew exactly where they were going to put this proceeding and they put it right in front of the same judge who was still conducting the foreclosure proceeding. Again, we argue that I think the statute dictates that this be considered a new proceeding and that we have an absolute right to a substitution of judge. Thank you. Thank you. The case is being taken under advisement. This court stands adjourned.